# EXHIBIT "C"

Cont'd

not. You didn't seem to have a problem -- no one seemed to have a problem with the one made at the valley Forge Hilton which was cancelled and didn't have a cancellation fee, correct? There was no problem with that, was there?

A. Like I said, in either way, okay, everybody is responsible for themselves.

Q. Then why did you ask her to make a block reservation for 15 rooms at two separate conferences?

A. What I recommend to the intern is they have to stay in the same hotel since they ride the same transportation --

Q. That doesn't answer the question.

A. -- for convenience.

Q. Let's take it one at a time. You do agree with me that she made two block reservations, one at the Valley Forge Hilton in May of 2006 and another one at the City Avenue Hilton in July of

2006, correct?

A. Based on the schedule you showed me.

Q. The answer is yes, correct?

A. Yes, I'm aware.

Q. Both of them had to be canceled, correct; they were both canceled?

A. Yes.

Q. You never told Donna Rutkowski at the time she either made or canceled the first one in May that she shouldn't be making reservations for the group, did you? Take a look at R-7 again and Page GOV-4: Lilibeth, I have made block 15 rooms with my credit card to Valley Forge Hilton and provided them with all 15 names.

A. Page 4, you said?

Q. GOV-4, right, that one. You knew she had made a block reservation and you didn't tell her you shouldn't be doing that, did you?

A. I have told them -- again,

I'm repeating, I have told them that they're responsible to make a reservation -- she may have blocked the 15 rooms.

Q. With her credit card.

A. That, I'm not aware.

Q. It's what it says, doesn't it (indicating)?

A. What I am saying is they are responsible for following up to make sure they give their own individual credit card.

Q. Let's assume for a moment that at the time of check-in there had been -- each one would use their own credit card; however, if the reservation has a cancellation provision, then there's going to be a liability, you are going to owe some money, correct?

A. If you didn't do it within the terms and conditions.

Q. What terms and conditions? You mean of the reservation itself, correct?

A. Right.

Q. If she is authorized to make a reservation and the reservation has a cancellation provision, then the government or whoever puts down the credit card is going to be responsible for the cancellation fee, correct?

A. I cannot answer that question.

Q. In either case of these reservations, does any e-mail have you saying that she shouldn't be making block reservations? You can agree with me on that, correct? You never sent any e-mail in response to the e-mails where she is telling you she's made these reservations?

A. Via e-mail, no.

Q. You were aware of both of them, correct?

A. Yes, I'm aware of them.

Q. Isn't the difference between the two only the fact that the City Avenue reservation had a cancellation clause? Is there any other difference

that you're aware of?
A. I wasn't aware of the cancellation clause.
Q. That's what I'm saying. The only difference between the two of them is one had a cancellation clause and one didn't. Is there any other difference?
A. No.
Q. Had the meetings gone forward as scheduled, both of them, you would have expected those two hotels to have held the rooms for you, wouldn't you?
A. Yes.
Q. If they hadn't held them, you would have told your counsel we should be suing them or something to that effect if you showed up at the hotels and the rooms weren't held even though you had reservations?
A. (No response.)
Q. Wouldn't you have been upset?
A. Would I been upset?
Q. Yes. If you had reservations and these meetings went forward as

scheduled and the hotel hadn't held your reservations, so you showed up and there were no rooms?

A. I would not be upset. I'm sure customer service would probably do something else.

Q. You wouldn't be upset if you showed up and didn't have a room, if you drove up to Philadelphia and there were no rooms available driving up and down City Avenue?

A. No, it's not the end of the world, you know.

Q. Wouldn't you have thought, though, that they had broken the deal you had; don't you think a reservation is a deal you have with a hotel?

A. Reservation is -- for me is not a deal.

Q. It's a deal -- you don't think it's a deal that at least binds the hotel? If you make a reservation, you think the hotel is free to say sorry, we decided to give it away to somebody else?

A. I made a reservation and I cancel it. It's, like, no deal.
Q. That's not what I asked, though. I said assuming you didn't cancel.
A. Until I sign my credit card, it's a deal.
Q. What I'm asking you, though, is if you don't cancel the reservation, do you think the hotel is obligated to hold your rooms until you appear at the hotel?
A. If I don't cancel it?
Q. Right.
A. Usually they tell you specific time when you can cancel it.
Q. Okay. Did you ever ask Ms. Rutkowski what the cancellation terms were of either of these reservations?
A. No.
Q. The fact is that she was authorized to make the reservation, correct? Just to make the reservation, I'm not saying anything else.

A. To make a reservation?

Q. Yes.

A. I was aware she made a reservation.

Q. She was authorized to make the reservation. In fact, you had asked her to make the reservation, hadn't you?

A. Like I said, I don't recall I authorized her.

Q. I'm not saying you authorized her. That's the term you're using. I said you asked her.

A. Like I said, I don't recall I asked her.

Q. You never told her, though, that she wasn't authorized; you knew about both of them and you never told her you shouldn't be doing this, did you?

A. They know they're quality. We don't have -- that's our function, quality. We don't have the authority.

Q. That's something somebody else told you, isn't it?

A. No, sir.

Q. Try to listen to the questions I'm asking because you're making speeches and we're going to be a very long time where I just ask the same question over and over again. It's really a very simple question, which is: The problem with what happened here, as far as you're concerned, is she made reservations with a hotel that had a cancellation fee, isn't it; that's the problem?

A. Okay.

Q. Do you agree?

A. Yes.

Q. Had there not been a cancellation fee, there would be no problem with her making the reservation for the entire intern group, would there?

A. Can you repeat that question?

Q. I said had there been no cancellation fee, there would have been no problem with her making the reservation for the 15-person intern group, would there? She reserved 15

rooms.

A. She just reserved -- I said reserve 15, and then each individual will be calling for their credit card. Yes, there's no problem with this, calling to say I want to block 15 and then the individual will call and give their credit card.

Q. Except that wasn't what she was doing if you look at GOV-4. She used her credit card to guarantee the rooms, correct? That's what it says, doesn't it?

A. Yes. However, GOV-1 says you make individual recommendation.

Q. Again, you didn't speak to -- we're going to go back in circles.

I'm asking you, though, the one you got from Ms. Rutkowski, which is Lilibeth, I blocked 15 rooms with my credit card to the Valley Forge Hilton, at no point after that did you ever tell her you shouldn't be doing that, did you?

A. I did tell the group.

Q. When? After June, correct, after this went down?

A. It's not after June. It was in April (indicating).

Q. I understand that, but she had made a reservation; the date of that is April 28th. She had blocked 15 rooms with her credit card to the Valley Forge Hilton and provided them with the 15 names. It says use their card when they check in at the hotel. Each one was supposed to pay individually when they showed up, but she had made the reservation, guaranteed with her own credit card, correct?

A. She blocked 15 rooms and they individually have to pay for the room.

Q. You said all hotels have a cancellation policy, is what you said before, correct?

A. Yes.

Q. Had the reservation not been canceled until, say, the last day -- maybe the instructor got sick and the

conference couldn't go forward but it was too late to cancel -- what would have happened?

A. If it was late?

Q. Right, if it was too late to cancel because she had made the reservation with her card and there was a last-minute problem with the instructor.

MS. DUNSMORE: Are you talking hypothetically?

MR. BART: Yes, hypothetically. This didn't happen; I state that for the record, this didn't happen.

BY MR. BART:

Q. She had blocked them with her card, and assume for the moment that the Valley Forge Hilton had a cancellation policy that you had to cancel 24 hours in advance --

A. Right.

Q. -- and the instructor gets sick that day. She would have been responsible on that one credit card for

the entire reservation, wouldn't she?
A. The instructor got sick and they were informed the same day?
Q. Correct. It happens?
A. Yes, that happens.
Q. If she is authorized to make the reservation for the 15 --
MS. DUNSMORE: I'm not sure she said she was authorized to make reservations for all 15. You've tried to get her to say that.
MR. BART: I think she did before; I think I actually did get her to say that, but if you want me to go back, we'll go back and do it again.
BY MR. BART:
Q. Ms. Rutkowski was authorized -- she is telling you she's doing it right here. She testified that you asked her to do it. She was authorized to make a block reservation, correct?
A. Like I said, go back to GOV-1. That's the same day that Pam

Latker -- she is our head for the intern training. She said I would recommend you make individual reservation.

Q. Take a look at the times of those two.

A. 10:13.

Q. Look at the one she is sending to you. It's afterwards, two hours later, GOV-4. That's why I'm saying I think you're misinterpreting what Ms. Latker is saying, but we'll let Ms. Latker answer for herself. The fact is even after her e-mail which you were copied on, you have Ms. Rutkowski telling you she has made a block reservation but each one will pay for it when they show up, and you didn't have a problem with that, did you?

A. No.

Q. In the hypothetical I just gave you, I was saying and you were acknowledging that sometimes things come up the last day, someone -- traffic, accident, injury, illness; there's a

cancellation at the last second. What is the difference between that and Ms. Rutkowski signing an agreement -- let me just mark that. Well, it was marked before.

R-8, take a look at that (indicating). Do you recognize the contract she signed?

A. No, sir.

Q. You never saw it before?

A. No, sir.

Q. At any time?

A. No, sir.

Q. Do you know her signature?

A. (No response.)

Q. She acknowledged at her deposition she signed it. What is the difference between signing a contract providing for a cancellation clause and making a reservation confirmed with her government credit card but -- for the entire group in the event that cancellation comes too late to avoid the cancellation fee; what's the difference?

A. First of all, I'm not aware of this paper. This is the first time I've seen this paper. I am not familiar with this; I've never seen this paper (indicating).

Q. You testified before that you knew a problem with it was it had a cancellation clause, correct?

A. I was aware about the issues about the Hilton dispute.

Q. You know there is a problem because the Hilton is seeking a cancellation fee for canceling that reservation, correct?

A. Yes.

Q. All I'm asking you is what is the difference between guaranteeing a reservation on a credit card for 15 people and guaranteeing a reservation in a written contract for 15 people?

A. For my definition, okay, I -- like I said, I feel like I know I've been telling you about -- this, I'm not aware of this thing, the first time I've seen

this (indicating). I was aware of her making a reservation but as far as the interns are responsible for themselves. The documentation, this one, I've never seen it (indicating).

Q. In your own declaration you said you were aware that she had made a reservation for a block of rooms at the Hilton City Avenue, correct?

A. Yes.

Q. In neither case, the one in the Hilton in Valley Forge, Valley Forge Hilton, and in the City Avenue Hilton, did you ever send her any e-mail saying that you shouldn't be reserving a block of rooms; that's correct, isn't it?

A. I don't recall.

Q. In fact -- you keep pointing to the Pam Latker e-mail, but even after that e-mail, she sent you an e-mail saying that she had just made a block reservation with her card, and you didn't send her anything back, did you?

A. Yes, but I verbally told

them. I am with the interns, so I always tell them.

Q. Are you denying that you told her that you asked Ms. Rutkowski to make block reservations for those two events? That was her testimony.

A. Like I said, I don't recall.

Q. R-7 would indicate that Pam Latker knew that -- at least she knew that Ms. Rutkowski -- if you look at the second page, she knew that Ms. Rutkowski was telling her that you --

A. GOV-7?

Q. Look at GOV-2. It goes to Napoleon Walker and then gets referred to Pam Latker on GOV-1.

She knows you wanted her to make block room reservations for a Philadelphia trip, correct?

A. Are you talking about this one (indicating)?

Q. Yes.

A. Yes.

Q. I may have asked this before:

Do you know who the contract officer is who would be responsible for making contracts for room reservations?

A. No.

Q. If the only one who is able to do it is a contracting officer, how could you ever make reservations if you don't know who it is?

A. You just use your government credit card just like your private -- you give the credit card.

Q. If the credit card is -- if the event is canceled, who pays?

A. You call before the event is -- if you found out the event is canceled, you call the hotel and cancel the reservation.

Q. That brings me back to the question I've been trying to get you to answer, which is isn't the real problem here not that she was making reservations but that she made a reservation with a hotel that had a cancellation fee?

A. Can you repeat that again,

sir?

Q. Isn't the real problem, the only issue here, not that she was making a reservation, because she did it on a couple of occasions, but that she made a reservation at a hotel that had a cancellation fee?

A. I guess, yes.

Q. Had the City Avenue hotel not had a cancellation fee and she would cancel a reservation, there would have been no issue, correct, just would have been a canceled reservation and you would have gone on, correct?

A. Whether both or not, the same, yes.

Q. Had the meeting gone forward, you would have expected the reservations to have been held, correct?

A. Yes.

MR. BART: I have no further questions.

MS. DUNSMORE: Let us step out for a minute.

(Ms. Dunsmore and
Mr. Yenovkian leave the room.)
MS. DUNSMORE: I just have a couple questions.
BY MS. DUNSMORE:
Q. Ms. de los Santos, are you familiar with travel orders?
A. Yes.
Q. What are travel orders?
A. Travel orders, it's documentation allowing you to proceed to travel.
Q. Is it for an individual or group?
A. Individual.
Q. Do you have authority to make travel arrangements for individuals other than yourself?
A. Do I have authority other than myself, no, just for myself; I have authority for myself.
Q. Are you allowed to make travel arrangements, lodging, hotel reservations, for other people?

A. No.

Q. Can you recall any time when you've made travel arrangements for other people?

A. No, I have not made reservations; no.

MS. DUNSMORE: I have no further questions.

MR. BART: I have no further questions.

- - -

(Witness excused.)

- - -

(Deposition concluded at 12:52 p.m.)

- - -

C E R T I F I C A T E

I hereby certify that the witness was duly sworn by me and that the deposition is a true record of the testimony given by the witness.

Beth A Barkocy
________________________________

BETH A. BARKOCY, CCR

(The foregoing certification of this transcript does not apply to any reproduction of the same by any means, unless under the direct control and/or supervision of the certifying court reporter.)

INSTRUCTIONS TO THE WITNESS

Please read your deposition over carefully and make any necessary corrections. You should state the reason in the appropriate space on the errata sheet for any corrections that are made.

After doing so, please sign and date the errata sheet.

You are signing same subject to the changes you have noted on the errata sheet, which will be attached to your deposition.

It is imperative that you return the original errata sheet to the deposing attorney within thirty (30) days of receipt of the transcript by you. If you fail to do so, the deposition transcript may be deemed to be accurate as submitted and may be used in court.

\- - - - - - -

E R R A T A

\- - - - - - -

| PAGE | LINE | CHANGE |
|---|---|---|
| ______ | ______ | ______________________ |
| ______ | ______ | ______________________ |
| ______ | ______ | ______________________ |
| ______ | ______ | ______________________ |
| ______ | ______ | ______________________ |
| ______ | ______ | ______________________ |
| ______ | ______ | ______________________ |
| ______ | ______ | ______________________ |
| ______ | ______ | ______________________ |
| ______ | ______ | ______________________ |
| ______ | ______ | ______________________ |
| ______ | ______ | ______________________ |
| ______ | ______ | ______________________ |
| ______ | ______ | ______________________ |
| ______ | ______ | ______________________ |
| ______ | ______ | ______________________ |
| ______ | ______ | ______________________ |
| ______ | ______ | ______________________ |
| ______ | ______ | ______________________ |
| ______ | ______ | ______________________ |

ACKNOWLEDGMENT OF DEPONENT

I, ______________________, do hereby certify that I have read the foregoing pages and that the same is a correct transcription of the answers given by me to the questions therein propounded except for the corrections or changes in form or substance, if any, noted in the attached Errata Sheet.

____________________________
Date

____________________________
Signature

Subscribed and sworn to before me this
day of , 200 .
My commission expires:

Notary Public

EXHIBIT
DS-1
BRG 10/12/07

BEFORE THE
UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| Stout Road Associates, Inc. t/a Hilton Philadelphia City Avenue | ) | |
| v. | ) | Fed. Cl. No. 07-015C |
| United States | ) | |

## DECLARATION OF LILIBETH B. DE LOS SANTOS

I, Lilibeth B. de los Santos, declare as follows:

1. I am a Supervisory Quality Assurance (QA) Specialist supervising QA Specialist interns under the Defense Logistics Agency's Intern Development Program. I am stationed at Defense Supply Center Richmond. I have been a Supervisory QA Specialist since 2000 and have been assigned to supervise the QA Specialist interns since April of 2006.

2. As a Supervisory QA Specialist, I am in job series 1910 under the federal personnel system. The Position Description for my job is attached to this declaration.

3. As a Supervisory QA Specialist, I have no authority to enter into contracts on behalf of the Government.

4. I was aware in late-April of 2006 that one of the QA Specialist interns under my charge, Ms. Donna Rutkowski, had reserved 15 rooms at Plaintiff's Hilton Philadelphia City Avenue Hotel for the two-week training the interns were to receive July 10 – 21, 2006 at the Defense Supply Center Philadelphia.

5. On June 14, 2006, I informed the interns that the training scheduled for July 10 – 21, 2006 had been cancelled. Ms. Rutkowski copied me on her email of that same day.

6. On June 15, 2006, the hotel responded to the email and asserted its entitlement to a $18,000 cancellation fee. At that point, my supervisor, Mr. Rowland R. Herpel, advised Ms. Rutkowski and I to cease direct communications with the hotel.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Richmond, Virginia on May 29, 2007.

LILIBETH B. DE LOS SANTOS
Supervisory Quality Assurance Specialist