IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STOUT ROAD ASSOCIATES, INC. t/a<br>HILTON PHILADELPHIA CITY AVENUE, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 07-145C<br>(Judge Wheeler) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 7.2 of the Rules of the Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits this reply in support of its motion for summary judgment, and opposition to plaintiff's cross motion for summary judgment. In our motion for summary judgment, we established that the agreement at issue in this case is not a contract, as a matter of law, because the individual who signed the agreement, Donna Rutkowski, was not a warranted contracting officer, and had no actual authority, express or implied, to contract on behalf of Defense Supply Center Richmond ("DSCR"). Plaintiff, Stout Road Associates, Inc. ("Stout Road") responds, in its opposition to our motion for summary judgment and cross motion for summary judgment, that Ms. Rutkowski had both express and implied actual authority to enter into this contract, or, in the alternative, that Ms. Rutkowski's actions in signing the agreement were ratified by her superiors. Because no material questions of fact exist in this matter, defendant respectfully requests that this Court grant summary judgment in its favor.

## STATEMENT OF FACTS

Stout Road is a Pennsylvania corporation with a principal place of business in Philadelphia, PA. Compl. ¶ 3. On or about April 26, 2006, DSCR employee Donna Rutkowski entered into an agreement (hereinafter "the agreement") with Stout Road for reservation of fifteen rooms for July 9, 2006 through July 20, 2006, at a rate of $125.00 per room per night, for at total of $22,500. Compl. ¶¶ 1, 5. The contract contained a cancellation clause that provided that:

> Cancellation of this agreement less than one (1) year prior to the contracted event dates, the Group will be assessed eighty percent (80%) of the anticipated gross revenue derived from sleeping rooms.

Compl. ¶ 7. On June 14, 2006, Ms. Rutkowski sent an e-mail to Stout Road cancelling the room reservations. Compl. ¶ 8. Plaintiff responded that DSC Richmond owed it $18,000, which is 80% of $22,500, as well as attorneys fees, interest and other costs. Compl ¶¶ 10, 14.

Ms. Rutkowski is a Quality Assurance Specialist intern in the Defense Logisitic Agency's Entry-Level Intern Program, stationed at DSCR. Rutowski Dec. ¶ 1 & Att.1, at Exhibit A to this brief. Ms. Rutkowski does not have authority to enter into contract on behalf of the Government. Rutkowski Dec. ¶ 3 & Att. 1. In fact, warranted contracting officials are the only officials at DSCR authorized to bind the Government. Hill Decl. ¶¶ 3-5 & att. 1, at Exhibit B to this brief. DSCR also employs Quality Assurance (QA) Specialists, who occupy the "1910" series in the Federal personnel system. See, e.g., Herpel Decl. ¶ 2. QA Specialists generally help ensure the parts purchased by DSCR meet applicable quality, testing and technical standards. Herpel Decl. ¶ 2. & att. 1 at exhibit C to this brief; de los Santos Decl. ¶ 2 & att.1 at Exhibit D to this brief;

Rutkowski Decl. ¶ 2 & att. 1. QA Specialists are not authorized to enter into contracts on behalf of DSCR or DLA. Hill Decl. ¶¶ 3, 6; Herpel Decl. ¶ 3; de los Santos Decl. ¶ 3; Rutkowski Decl. ¶ 3. Mr. Herpel and Ms. De los Santos are QA Specialists. Herpel Decl. ¶¶ 1-3; de los Santos Decl. ¶¶ 1-3. They are not contracting officials and do not possess warrants that would authorize them to bind the government. Hill Decl. ¶ 6; see also Herpel Decl. ¶ 3; de los Santos Decl. ¶ 3; Rutkowski Decl ¶ 3. Pam Latker is Defense Agency Training Center ("DTC") Career Programs Branch Chief, and in that capacity serves as the Defense Logistics Agency ("DLA") Corporate Intern Project Manager. Latker Dec. ¶ 1, attached to this brief at Exhibit E. In that position she is responsible for all DLA Corporate Interns, including DSCR interns. Id. She is responsible for directing, planning, developing, and administering the DLA Corporate Intern Program to achieve entry-level workforce development goals. Id. Ms. Latker is not a contracting officer, and is not authorized to enter into contracts on behalf of DSCR or DLA. Latker Dec. ¶ 2.

On November 8, 2006, Hilton filed a formal claim with the contracting officer at DSCR. Compl. ¶ 15. On 28, 2006, the contracting officer responded that because Ms. Rutkowski was not authorized to enter into contract on behalf of DSC Richmond, Stout Road's claim would not be considered. Compl. ¶ 16. On 13, 2006, DSC Richmond's contracting officer issued a letter refusing to issue a formal decision to the claim. Compl. ¶ 17. Because more than thirty days had passed since the claim was filed without formal determination, plaintiff determined that the claim was deemed to be denied, and filed this action. Compl. ¶ 18.

# ARGUMENT

I. Standard of Review

Summary judgment should be granted where, as here, there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987); Ralph Larson & Son, Inc. v. United States, 17 Cl. Ct. 39, 42 (1989). Indeed, disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. Doe v. United States, 48 Fed. Cl. 495, 499 (2000) (citing Anderson, 477 U.S. at 247-48; Lane Bryant, Inc. v. United States, 35 F.3d 1570 (Fed. Cir.1994)). Thus, while summary judgment will not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party," see id. (quoting Anderson, 477 U.S. at 248), summary judgment is appropriate when the sole dispute concerns a question of law.

II. Ms Rutkowski did not have actual authority to enter into the agreement

In order to prove the existence of a contract with the United States, plaintiff must demonstrate that Ms. Rutkowski had actual authority to bind the United States in contract. First Federal Lincoln Bank v. United States, 54 Fed.Cl. 446, 452 (2002) (citing Trauma Serv. Group v. United States, 104 F.3d 1321, 1325 (Fed.Cir.1997); Total Med. Mgmt., Inc. v. United States, 104 F.3d 1314, 1319 (Fed.Cir.1997)). "'Government employees hold express actual authority to bind the government in contract only when the Constitution, a statute, or a regulation grants them such authority in unambiguous

terms.'" First Federal Bank, 54 Fed.Cl. at 452 (quoting Starflight Boats v. United States, 48 Fed.Cl. 592, 598 (2001)).

Contracts entered into by Government personnel who lack authority to bind the Government are unenforceable. City of El Centro v. United States, 922 F.2d 816, 820-21 (Fed. Cir. 1990); see also Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1263 (2005) ("Surely the assurances from a government agent, having no authority to give them, cannot expose the government to risk of suit for the nonperformance of an obligation that it did not intentionally accept."). When a Federal employee exceeds his or her authority, the Government can "disavow the [agent's] words and is not bound by an implied contract." Essen Mall Properties v. United States, 21 Cl. Ct. 430, 445 (1990). The United States Court of Appeals for the Federal Circuit has explained rationale for this rule as follows:

> The United States Government employs close to three million civilian employees. If all Government employees could, of their own volition, enter into contracts obligating the Government, then federal expenditures would be wholly uncontrollable.

Monarch Assurance P.L.C. v. United States, 244 F.3d 1356, 1360 (Fed. Cir. 2001) (footnote omitted). Indeed, the Supreme Court has made clear that "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority" even if "the agent himself may have been unaware of the limitations upon his authority." Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947).

A plaintiff asserting the existence of a contract with the United States thus bears the burden of establishing that the person or people upon whose alleged promises or representations the plaintiff relied had actual contracting authority. Heckler v.

Community Health Serv. of Crawford County, 467 U.S. 51, 63 (1984); see Grundy v. United States, 2 Cl. Ct. 596, 599 (1983) (holding that a "claimant for money damages for breach of contract must plead and prove that the Government officer, who supposedly entered into the contract with the claimant, had the actual authority to appropriate Government funds for such purpose"). Accordingly, to prove a valid contract with the United States, Stout Road must demonstrate that Ms. Rutkowski, the individual who allegedly entered into a contract with Stout Road, possessed the authority to do so. Federal Crop Insurance Corp., 332 U.S. at 384; Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429, 1432-33 (Fed. Cir. 1998); Trauma Service Group, 104 F.3d at 1325; City of El Centro, 922 F.2d at 820-21.

To the extent Stout Road failed to inquire adequately about Ms. Rutkowski's authority to bind the Government in contract, Stout Road assumed the risk that such employees lacked requisite authority. "[A]nyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority . . . [T]his is so even though . . . the agent may have been unaware of the limitations upon his authority." Merrill, 332 U.S. at 384. Where "none of the officials with whom plaintiff conceivably dealt" were authorized to contract in the manner alleged, Stout Road's breach of contract claims against the Government must fail. Cornejo-Ortega v. United States, 61 Fed. Cl. 371, 374 (2004).

In this matter, Stout Road does not dispute that it has the burden to "show that the government agent whose conduct was relied upon had actual authority to bind the government in contract." Doe v. United States, 48 Fed. Cl. at 501 (citing City of El-

Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990)). Rather, it argues that Ms. Rutkowski had express and implied actual authority to enter into the contract, and, indeed, argues that it is entitled to summary judgment. However, plaintiff has not met, and cannot meet, its burden to show that Ms. Rutkowski had the requisite authority to enter into any agreement on behalf of the United States, and thus, summary judgment should be granted on behalf of the Government.

1. Ms. Rutkowski Did Not Have Express Actual Authority To Enter Into The Agreement

Defendant's motion for summary judgment should be granted, and plaintiff's motion should be denied, because Ms. Rutkowski did not have express actual authority to enter into the agreement. Actual authority must be delegated specifically and explicitly, either by Congress or through agency rule-making. El Centro, 922 F.2d at 820. The authority to contract is delegated by the President to the head of a Federal agency. 48 C.F.R. § 1.601. Contracting officers can only bind the United States "to the extent of the authority delegated to them" by the agency head. 48 C.F.R. § 1.602-1(a); see Federal Crop Insurance Corp., 332 U.S. at 384; Harbert/Lummus Agrifuels Projects, 142 F.3d at 1432-33. In this case, as discussed below, Ms. Rutkowski did not have any authority to bind the Government and, accordingly, the United States is entitled to summary judgment.

"'Government employees hold express actual authority to bind the government in contract only when the Constitution, a statute, or a regulation grants them such authority in unambiguous terms.'" First Federal Bank, 54 Fed. Cl. at 452 (quoting Starflight Boats v. United States, 48 Fed. Cl. 592, 598 (2001)). There can be no question that Ms. Rutkowski did not have the express actual authority to enter into the agreement. Plantiff

has the burden of establishing Ms. Rutkowski's actual authority, Heckler, 467 U.S. at 63, but has not cited a single statute or regulation that grants Ms. Rutkowski such authority. In fact, no such statute or regulation exists.

As explained in defendant's motion for summary judgment, and in the affidavit signed by Tanya Hill, Chief of the Contract Review and Pricing Division in the Procurement Process Support at DSCR, only contracting officers at DSCR who have been issued warrants under the regulatory scheme have the authority to bind the Government in contract. Hill Decl. ¶¶ 3-5 & att. 1 (the relevant portions of the FAR, DFAR and Defense Logistics Acquisition Directives). As a Quality Assurance Specialist Intern, Ms. Rutkowski is not a warranted contracting officer, and thus cannot bind the government in contract. Hill Decl. ¶ 6; Rutkowski Decl. ¶ 3 and attachments. Because Ms. Rutkowski is not a warranted contracting officer, she did not have the authority to sign the putative agreement with Stout Roadand to bind the Government in contract.

Although plaintiff has not cited a single statute or regulation purporting to grant Ms. Rutkowski authority to contract, it nonetheless seeks summary judgment, arguing that Ms. Rutkowski had actual express authority to bind the United States. Pl. Br. at 10-12. Plaintiff argues that because "interns were responsible for their own travel arrangements, actual authority lay with Rutkowski to make the reservation that is at issue." Pl. Br. at 11. Plaintiff is mistaken. Ms. Rutkowski was, like many Government employees, authorized under limited circumstances to be reimbursed from the Government for the costs of her work-related travel, including lodging. This is, however, a far cry from being authorized to sign a contract on behalf of the United States binding the Government to pay for numerous hotel rooms. Neither Ms. Rutkowski, nor anyone

who is not a warranted contracting officer with express statutory or regulatory authority to enter into such a contract could sign an agreement such as the agreement at issue in this case.

Both plaintiff's brief and the deposition testimony of the witnesses in this case make reference to the fact that DSCR employees were allowed to book themselves lodging when called upon to participate in work-related travel. This is correct. The reimbursement of certain federal travel expenses, including mileage, hotel and other incidental expenses, is governed by 5 U.S.C. §§ 5701-5710, the statutory provisions addressing federal Travel and Subsistence Expenses and Mileage Allowances, and 41 C.F.R. pts. 300-304, the Federal Travel Regulation. These regulations are supplemented at DSCR by the Department of Defense Civilian Personnel Joint Travel Regulations (hereinafter "JTR"), provided to plaintiff at GOV 909-1341.[1] These regulations govern the procedures relating to DSCR employee travel. See JTR Appendix A at GOV 1217.

DSCR employees, including interns such as Ms. Rutkowski, are occasionally authorized to travel for work-related reasons. When travel is necessary, the employee must be issued a written travel authorization which establishes establish the conditions under which official travel and transportation is authorized at Government expense. JTR par. C3050 at GOV 972. "The purposes of travel authorizations are to provide the traveler information regarding what expenses are to be paid, provide [Commercial Travel Offices] and travel service vendors with necessary documentation for travel program use, provide necessary financial information for budgetary planning, and identify the travel purpose." Id.

[1] The cited portions of the JTR are attached to this brief as Exhibit F.

Unless otherwise specified, DSCR employees are required to use their Government-sponsored, contractor-issued individually billed charge card to pay for travel expenses. 41 C.F.R §301-51.1; JTR part C1100 at GOV 929 ("It is the general policy of DoD that the Government-sponsored, contractor-issued travel card be used by DoD personnel to pay all costs incidental to official business travel, including travel advances, lodging, transportation, rental cars, meals and other incidental expenses, unless otherwise specified."). A Government-sponsored, contractor-issued individually billed charge card is "a charge card used by authorized individuals to pay for official travel and transportation expenses for which the card contractor bills the employee." (emphasis added) JTR Appendix A at GOV 1220. See also Department of Defense Statement of Understanding Government Travel Charge Card Program, GOV 813, attached to this brief at Exhibit G (in which DOD employees with Government credit cards certify that "I also understand that I am authorized to use the card only for those necessary and reasonable expenses incurred by me for official travel.").

Although DSCR employees must personally pay for all travel expenses with their individually billed credit card, Government employees are entitled to reimbursement for their travel expenses. 5 U.S.C. § 5702; 41 C.F.R. § 301-52. When DOD employees travel they are thus reimbursed for their cost of travel on the "lodging plus per diem system," which is a method of computing per diem allowances for official travel in which the per diem allowance for each travel day is established on the basis of the actual amount the traveler pays for lodging, plus an allowance for meals and incidental expenses, the total of which does not exceed the applicable maximum per diem rate for the location concerned. 41 C.F.R. § 300-3.1; JTR par. C4553 at GOV 1018. Moreover,

the regulations explicitly provide that up to the discretion of the Government to reimburse employees for any travel costs incurred when travel is curtailed, cancelled or interrupted, even if such cancellation is done for official reasons. JTR par. C1445 at GOV 934.[2]

In sum, Government travel regulations clearly provide authority for employees who have been properly issued travel orders to procure lodging for themselves with their government sponsored contractor issued individually billed charge cards, for which they will be reimbursed. Employees are not authorized, however, to bind the Government for the cost of such rooms. In fact, should the travel be cancelled for any reason the regulations provide that the authorizing official "may" (but not "must") reimburse the employee for any lodging costs. JTR par. C1445. Despite plaintiff's argument to the contrary, the limited right an employee has to be reimbursed for travel costs does not confer actual express authority upon the employee to bind the Government in contract for hotel rooms. Plaintiff does not and cannot, despite its rhetoric, point to any express statutory authority for Ms. Rutkowski to book lodging on behalf of a group of people and

[2] JTR par. C1445 states:

A. When [Temporary Duty] is Curtailed, Cancelled or Interrupted for Official Purposes. When a traveler has made advance lodging arrangements… and the [temporary duty] is curtailed, cancelled, or interrupted, lodging costs may be approved by the [approving official] . … Reimbursement must not exceed the amount of the remaining per diem or [actual expense allowance] plus appropriate lodging taxes that would have been paid had the [temporary duty] not been curtailed or interrupted. (emphasis added).

B. Considerations. The [approving official] should consider the following conditions.

1. The traveler acted reasonably and prudently in incurring lodging expenses.
2. The traveler had a reasonable expectation of the [temporary duty] being completed as authorized.
3. The assignment was changed for official purposes or for other reasons beyond the traveler's control that are acceptable.

thereby bind the United States in contract for the amount of the travel, because no such authority exists.

2. Ms. Rutkowski Did Not Have Implied Actual Authority To Enter Into The Agreement

Stout Road asserts, in the alternative, that Ms. Rutkowski had "implied actual authority" to bind the Government. Because Ms. Rutkowski did not have such implied actual authority, the Court should grant Defendant's motion for summary judgment and deny plaintiff's motion. "[A]uthority to bind the Government is sometimes implied when such authority is considered to be an integral part of the duties assigned to a Government employee." Sam Gray Enterprises, Inc. v. United States, 43 Fed. Cl. 596, 603 n.10 (1999). However, that "doctrine applies only when some contracting authority was actually delegated." Id. (quoting California Sand & Gravel, Inc. v. United States, 22 Cl. Ct. 19, 27 (1990), aff'd, 937 F.2d 624 (Fed. Cir. 1991), for the proposition that "a person with no actual authority may not gain actual authority through the court-made rule of implied actual authority").

Although Stout Road relies on H. Landau & Co. v. United States, 886 F.2d 322 (Fed. Cir. 1989), to postulate that Ms. Rutkowski had "implied actual authority," Stout Road stretches the holding of that case beyond its breaking point. In H. Landau, the Federal Circuit held that "implied actual authority . . . will suffice" to "hold the government bound by the acts of its agents." 886 F.2d at 324. In so holding, the Federal Circuit relied on a single Court of Claims case and an excerpt from a government contracts textbook. Id. (quoting Branch Banking & Trust Co. v. United States, 98 F. Supp. 757, 766, 120 Ct. Cl. 72 (1951), and J. Cibinic & R. Nash, Formation of Government Contracts 43 (1982)).

Since the issuance of H. Landau, the aforementioned textbook excerpt has taken on a life of its own, but the holdings of both H. Landau and Branch Banking – necessarily extracted from the facts of the cases – are exceedingly limited.[6] In the former, the court held that actual authority to draw checks on a joint bank account "might carry with it the implied authority to guarantee payment from that account." California Sand & Gravel, Inc. 22 Cl. Ct. at 27 (discussing H. Landau). In Branch Banking, the court merely held that "an officer authorized to make a contract for the United States has the implied authority thereafter to modify the provisions of that contract particularly where it is clearly in the interest of the United States to do so." 98 F. Supp. at 766 (quoted in H. Landau, 886 F.2d at 324).

Thus, in both H. Landau and Branch Banking, the government official possessed some actual authority to contract, but "a person with no actual authority may not gain actual authority through the court-made rule of implied actual authority." California Sand & Gravel, 22 Cl. Ct. at 27 ("The court believes that Landau and the theory of implied actual authority is of limited application, and was not intended to repeal the long established rule that, when dealing with the government, only government agents with actual authority can make a contract, express or implied."); see also Sam Gray Enterprises, Inc., 43 Fed. Cl. at 603 n.10 (implied actual authority "doctrine applies only

[6] Applegate v. United States, 52 Fed. Cl. 751, 758 (2002) (explaining that a case's holding properly is limited to its actual facts considered by the court); Liberty Mut. Ins. Co. v. United States, 70 Fed. Cl. 37, 51 (2006) ("Although Supreme Court dicta are binding on subordinate lower federal courts, the Federal Circuit has cautioned that dicta in its own decisions 'should be read in the light of the court's central holding and the controlling fact in that case.'" (quoting F. Alderete Gen. Contractors, Inc. v. United States, 715 F.2d 1476, 1479 (Fed. Cir. 1983)).

when some contracting authority was actually delegated"). Here, as we have shown, Ms. Rutkowski had no actual authority to contract on behalf of the United States, just a limited right to be reimbursed for her travel costs. As such, it would stretch the holdings of the cases relied upon by plaintiff beyond recognition, to find that Ms. Rutkowski, who has no actual contracting authority at all, somehow had implied actual authority to enter into the agreement.

Moreover there can be no question that entering into contracts binding the Government for the cost of hotel rooms is far from Ms. Rutkowski's "day to day responsibility" as a Quality Assurance Specialist Intern. Ms. Rutkowski's responsibilities as a Quality Assurance Specialist Intern are limited to performing a quality assurance functions for various products used by DSCR, and resolving quality assurance problems for DSCR contracts. See Quality Assurance Specialist job description at Exhibit B, (attached to Rutkowski Decl.). Indeed, Ms. Rutkowski's job description includes no reference to any activity that might suggest that entering into agreements such as the one at issue in this case was an "integral part of her duties." Plaintiff concedes as much since, beyond its mischaracterization of DSCR employee's limited right to be reimbursed for travel costs discussed above, plaintiff has not cited a single aspect of Ms. Rutkowski's actual day to day job responsibilities that would suggest that she has actual implied authority to contract.

III. Ms. Rutkowksi's Actions Were Not Ratified By Her Supervisors

Stout Road argues that the agreement was a binding contract because it was ratified by Pam Latker, DTC Career Programs Branch Chief for all DLA corporate interns, including DSCR interns. This argument is equally meritless. Ms. Latker did not

ratify the agreement. Ms. Latker does not have the authority to ratify an agreement such as the one at issue in this case. Most fatally, the FAR bars the agreement from being ratified in the manner plaintiff suggests this agreement was ratified.

"Agreements made by government agents without authority to bind the government may be subsequently ratified by those with authority" but only "if the ratifying officials have actual or constructive knowledge of the unauthorized acts." Harbert/Lummus, 142 F.3d at 1433 (quoting United States v. Beebe, 180 U.S. 343, 354 (1901), for the proposition that "ratification can only be based upon a full knowledge of all the facts upon which the unauthorized action was taken"). "Moreover, ratification must be based on a demonstrated acceptance of the contract. Silence in and of itself is not sufficient to establish a demonstrated acceptance of the contract by the [contracting officer]." Id. at 1434 (citations omitted).

Plaintiff argues that Ms. Latker ratified the agreement. It argues that Ms. Rutkowski indicated to Ms. Latker that she intended to make block reservations, "was not dissuaded from doing so," and thus, Ms. Latker ratified the agreement. Plaintiff has not shown, and cannot show, that Ms. Latker ratified this agreement. Plantiff's brief contains only a sweeping assertion that Ms. Latker ratified the agreement, but cites no specific fact or statement suggesting that did so ratify. Pl. Br. 14-15. Ms. Latker, on the other hand, specifically states that she did not ratify the agreement. See Latker Decl. ¶ 3.

Furthermore, plaintiff ignores the fact that even if Ms. Latker had wanted to ratify the contract she could not legally do so. Ms. Latker is not a warranted contracting officer, and does not herself have authority to enter into the agreement. Latker Decl. ¶ 2. She could not, therefore, ratify Ms. Rutkowski's actions. Plaintiff concedes that "for

effective ratification, a superior must have authority to ratify", Pl. Br. at 14, citing California Sand & Gravel, Inc. 22 Cl. Ct. at 27, but cites no statue or regulation supporting the proposition that Ms. Latker had such authority. See also FAR 1.6023(c)(2) (Ratification is effective only if the ratifying official has the authority to enter into a contractual commitment).

Moreover, the FAR itself bars ratification of the agreement in the method plaintiff suggests. The FAR authorizes ratification of Government contracts "only" if "[t]he resulting contract would otherwise have been proper if made by an appropriate contracting officer." FAR 1.602-3(c)(3) (emphasis added). The FAR provides that "that ratification must be done by "the head of the contracting activity", FAR 1.602-3(b)(2) and that "in no case shall the authority be delegated below the level of chief of the contracting office," FAR 1.602-3(b)(3); that the authority to ratify "may be exercised only when" "[s]upplies or services have been provided to and accepted by the Government, or the Government otherwise has obtained or will obtain a benefit resulting from performance of the unauthorized commitment," FAR 1.602-3(c)(1); and when "[t]he contracting officer recommends payment and legal counsel concurs in the recommendation." FAR 1.602-3(c)(5).

In this case, plaintiff has not alleged, and cannot allege that any of these conditions have been met. The alleged ratification was made not by "the head of the contracting activity" or "the chief of the contracting office" but by Career Programs Branch Chief for DSCR interns, an inappropriate person under the FAR. FAR 1.602-3(b)(2)-(3). The "supplies and services" at issue in this matter were not actually provided to the Government, since the room reservation was cancelled (thus provoking this

lawsuit) and the Government never received the benefit of the rooms. FAR 1.602-3(c)(1). Finally, no contracting officer (not even the alleged ratifier, Ms. Latker) ever recommended payment, and no legal counsel ever concurred in that recommendation. FAR 1.602-3(c)(5). Accordingly, even if Ms. Latker had meant to ratify Ms. Rutkowski's actions she would be legally unable to do so. Plaintiff's argument that Ms. Latker ratified this contract must, therefore, fail, and the Court should grant summary judgment for the defendant.

## CONCLUSION

For the above reasons, we respectfully request that the Court grant our motion for summary judgment and deny plaintiffs' motion for summary judgment.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Mark A. Melnick___
MARK A. MELNICK
Assistant Director

/s/Carrie A. Dunsmore
CARRIE A. DUNSMORE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tel: (202) 305-7576
Fax: (202) 514-8624

January 8, 2008

Attorneys for Defendant

Certificate of Filing

I hereby certify that on this 8th day of January, 2008, a copy of "Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment and Opposition to Plaintiff's Motion, Or In The Alternative, For Summary Judgment" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/Carrie A. Dunsmore
Carrie A. Dunsmore