# In the United States Court of Federal Claims

No. 07-145C

(Filed: March 14, 2008)

| | | |
|---|---|---|
| ****************************************** | * | |
| STOUT ROAD ASSOCIATES, INC., t/a HILTON PHILADELPHIA CITY AVENUE, | * | |
| Plaintiff, | * | Government Contracts; Intern's Lack of Authority to Bind the United States; Ratification Unavailable Where Superiors Lacked Authority; Summary Judgment. |
| v. | * | |
| THE UNITED STATES, | * | |
| Defendant. | * | |
| ****************************************** | * | |

*Jonathan J. Bart*, Wilentz, Goldman & Spitzer, P.A., Philadelphia, Pennsylvania, for Plaintiff.

*Carrie A. Dunsmore*, with whom were *Jeffrey S. Bucholtz*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Mark A. Melnick*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant.

**OPINION AND ORDER**

WHEELER, Judge.

This case presents the question of whether a Government intern has the contractual authority to bind the United States to a hotel reservation agreement that the intern later cancelled. Plaintiff, Stout Road Associates, Inc., trading as Hilton Philadelphia City Avenue ("Stout Road"), claims that the Government is liable for $18,000 in cancellation fees pursuant to the agreement, plus attorneys' fees, interest, and other costs. Also at issue is whether the intern's supervisors possessed contractual authority, and whether they ratified

the intern's agreement through their knowledge and consent. Defendant asserts that the intern and her supervisors lacked authority to enter into the agreement, and that ratification could not have occurred absent the requisite authority.

Defendant has moved to dismiss Stout Road's claim pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, or for summary judgment under Rule 56. Since the Court permitted Plaintiff to conduct discovery under Rule 56(f) regarding the authority and ratification issues, and the parties presented relevant materials outside of the pleadings, the Court will treat Defendant's motion as one for summary judgment. See Rule 12(b). For the reasons explained below, the Court finds that there are no genuine issues of material fact, and that Defendant is entitled to judgment as a matter of law. Defendant's motion for summary judgment is GRANTED, and Plaintiff's cross-motion for summary judgment is DENIED.

## Factual Background[1]

Stout Road is a corporation that operates a Hilton Hotel in Philadelphia, Pennsylvania. In 2006, Donna Rutkowski was a Quality Assurance intern at the Defense Supply Center, Richmond ("DSCR"), a field component of the Defense Logistics Agency ("DLA"). On April 25, 2006, Ms. Rutkowski entered into a letter of agreement with Stout Road to reserve fifteen rooms at the hotel from July 9-21, 2006 for a quality control training class to be held in Philadelphia. Ms. Rutkowski made the reservations for herself and the other interns who would be attending the training program. The agreed-upon room rate was $125 per night, or a total of $22,500 for twelve nights. Jaret Lyons, a Hilton representative, furnished the hotel's form agreement for Ms. Rutkowski to sign. The agreement contained a cancellation clause providing that:

> The Group agrees that should it cancel this commitment the actual damages may be difficult to determine. The following schedule represents a reasonable effort on behalf of the Hotel to establish their actual damages to be paid by the Group for cancellation of this contract.
>
> 1. Cancellation of this agreement from date of signing contract up to one (1) year of the contracted event dates, the Group will

[1] The facts herein are based upon the parties' proposed findings of fact, the briefs on the cross-motions for summary judgment, and an appendix of documents accompanying each brief. To the extent that any fact issues exist, they have no bearing on the outcome of the case.

> be assessed forty percent (40%) of the anticipated gross revenue derived from sleeping rooms.
>
> 2. Cancellation of this agreement less than one (1) year prior to the contracted event dates, the Group will be assessed eighty percent (80%) of the anticipated gross revenue derived from sleeping rooms.

(Letter of Agreement at 2). Ms. Rutkowski signed the agreement over her name and title, described as "Quality Tech, DLA Richmond." Id. at 4. Mr. Lyons signed the agreement on behalf of Stout Road. Ms. Rutkowski secured the reservation with her government-issued credit card. Ms. Rutkowski informed her supervisor, Lilibeth De Los Santos, that she had made hotel reservations for all of the interns. During the relevant period, Ms. De Los Santos was a Supervisory Quality Assurance Specialist who oversaw the agency's Intern Development Program.

On June 14, 2006, Ms. De Los Santos informed Ms. Rutkowski that the training class in Philadelphia had been cancelled. The agency had decided to move the training program to Richmond, and to postpone it until later in 2006. Ms. Rutkowski thereupon sent an e-mail message to Mr. Lyons of Stout Road cancelling the room reservations. Ms. Rutkowski sent a copy of this e-mail message to her superiors, Ms. De Los Santos and Rowland Herpel. In 2006, Mr. Herpel was a Supervisory Quality Assurance Specialist, serving as DSCR's Chief of the Technical and Product Evaluation Branch in the Directorate of Product Engineering. His duties included overseeing the Professional Development function and the intern program.

On June 15, 2006, Stout Road replied by e-mail to Ms. Rutkowski that DSCR was responsible for $18,000 in cancellation fees, representing eighty percent of the gross revenue the hotel anticipated from Ms. Rutkowski's reservations. Ms. Rutkowski immediately informed Ms. De Los Santos and Mr. Herpel of Stout Road's position. Mr. Herpel advised Ms. Rutkowski to cease further communications with the hotel.

On November 8, 2006, after attempts at resolution had failed, counsel for Stout Road filed a claim under the Contract Disputes Act, 41 U.S.C. § 605(a), with DSCR's Contracting Officer. On November 28, 2006, the Contracting Officer responded that Stout Road's claim would not be considered because Ms. Rutkowski was not authorized to enter into contracts on behalf of DSCR. On December 13, 2006, DSCR's counsel issued a letter stating that DSCR would not render a formal decision on the claim. On March 5, 2007, Stout Road filed suit in this Court, asserting that the claim was deemed to be denied without a formal Contracting Officer's decision. See 41 U.S.C. § 605(c)(5).

Only government officials who possess a Contracting Officer's warrant are authorized to bind the United States to a contract. See Federal Acquisition Regulation ("FAR") § 1.602-1; Standard Form ("SF") 1402, Certificate of Appointment. Ms. De Los Santos, and Mr. Herpel were Quality Assurance Specialists, and Ms. Rutkowski was a Quality Assurance intern. None of these persons possessed a Contracting Officer's warrant. An additional agency employee, Pamela S. Latker, serves as DLA's Corporate Intern Program Manager in Columbus, Ohio, and does not possess a Contracting Officer's warrant. Ms. Latker's declaration states that, after learning of the document signed by Ms. Rutkowski, "I never approved, sanctioned, or agreed that it was a proper or authorized action." (Latker Decl., Jan. 7, 2008, at ¶ 3).

On June 7, 2007, Defendant filed a motion to dismiss Stout Road's complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, or in the alternative, for summary judgment under Rule 56. Following discovery allowed by the Court pursuant to Rule 56(f), Stout Road filed its response and cross-motion for summary judgment on November 28, 2007. Defendant filed a reply and opposition to Stout Road's motion for summary judgment on January 8, 2008. Stout Road submitted a short reply on January 28, 2008. In addition to the briefs, the Court has before it the declarations of Ms. Rutkowski, Ms. De Los Santos, Mr. Herpel, and Ms. Latker, as well as transcripts of depositions taken by Stout Road. The parties also have provided the relevant correspondence and applicable agency regulations.

## Contentions of the Parties

Defendant contends that Ms. Rutkowski lacked any authority to bind the United States by contract, and therefore the April 25, 2006 agreement signed by Ms. Rutkowski to reserve a block of hotel rooms is unenforceable against the Government. Defendant asserts that actual authority must be evidenced by a Contracting Officer's warrant granting a government employee explicit contracting power, and in this case, the agency never granted such power to Ms. Rutkowski. Defendant further argues that Ms. Rutkowski's actions could not have been ratified by her superiors, because the agency officials who knew of the agreement also lacked any contracting authority.

In opposition, Stout Road claims that Ms. Rutkowski made similar group reservations on other occasions with the knowledge and approval of her supervisors. Stout Road alleges that no DSCR official provided any guidelines or restrictions to Ms. Rutkowski for making travel reservations. Presumably, the agency would have authorized reimbursement for the travel expenses if the training program in Philadelphia had gone forward as planned. Stout Road argues that the facts demonstrate DSCR's willingness to be bound by Ms. Rutkowski's travel reservations. Stout Road contends alternatively that, even if the agreement was

unauthorized when made, DSCR officials ratified Ms. Rutkowski's actions, creating an enforceable contract.

## Discussion

### A. Standard for Decision

Summary judgment should be granted where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. See RCFC 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1323 (Fed. Cir. 2001). The Supreme Court has approved the use of summary judgment as an integral part of the fair and efficient administration of justice. See Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). In appropriate cases, the summary judgment procedure "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the 'just, speedy, and inexpensive determination of every action.'" Id. (quoting Fed. R. Civ. P. 1). Where both parties move for summary judgment and allege an absence of any genuine issues of material fact, the Court still must determine independently the appropriateness of summary disposition in a particular case. See Prineville Sawmill Co., Inc. v. United States, 859 F.2d 905, 911 (Fed. Cir. 1988) (citing Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987)).

In addition, Plaintiff bears the burden of establishing the government employee's authority to contract on behalf of the Government. City of El Centro v. United States, 922 F.2d 816, 820-21 (Fed. Cir. 1990); Doe v. United States, 48 Fed. Cl. 495, 501 (2000). If the person who executed the agreement is found to lack authority, Plaintiff also bears the burden of proving that the agreement was later ratified by an official with the requisite authority. See, e.g., Trauma Serv. Group v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997); Doe, 48 Fed. Cl. at 503-04.

### B. No Genuine Issues of Material Fact Exist.

The parties' positions do not present any genuine issues of material fact. Both parties agree upon the circumstances surrounding Ms. Rutkowski's signature and her cancellation of the agreement. See Deft.'s Motion at 10; Pltf.'s Response at 1. The only issues are whether Ms. Rutkowski's actions were authorized or, alternatively, whether they were ratified after the fact, creating an enforceable contract. "In the absence of factual disputes, the question of contract formation is a question of law. . . ." Trauma Serv. Group, 104 F.3d at 1325. The Court therefore must decide whether an enforceable contract existed between DSCR and Stout Road.

C. Ms. Rutkowski Did Not Possess Actual Authority.

The United States has granted the authority to enter into contracts only to a limited class of government employees, known as Contracting Officers. See FAR § 1.601(a) (providing that "[c]ontracts may be entered into and signed on behalf of the Government only by contracting officers."). In order to prove the existence of a contract with the United States in this case, Stout Road must demonstrate that Ms. Rutkowski had actual authority to bind the United States in contract. First Fed. Lincoln Bank v. United States, 54 Fed. Cl. 446, 452 (2002) (citing Trauma Serv. Group, 104 F.3d at 1325; Total Med. Mgmt., Inc. v. United States, 104 F.3d 1314, 1319 (Fed. Cir. 1997)).

Contracts entered into by government employees who lack authority to bind the United States are unenforceable. See City of El Centro, 922 F.2d at 820-21; see also Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1263 (Fed. Cir. 2005) ("Surely the assurances from a government agent, having no authority to give them, cannot expose the government to risk of suit for the nonperformance of an obligation that it did not intentionally accept."); Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947) ("[A]nyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority" even if "the agent himself may have been unaware of the limitations upon his authority."). When a government employee exceeds his or her authority, the Government can "disavow the [agent's] words and is not bound by an implied contract." Essen Mall Props. v. United States, 21 Cl. Ct. 430, 445 (1990) (citing New Am. Shipbuilders, Inc. v. United States, 871 F.2d 1077, 1080 (Fed. Cir. 1989)). The Federal Circuit has explained that, if any of three million government employees "could, of their own volition, enter into contracts obligating the Government, then federal expenditures would be wholly uncontrollable." Monarch Assurance PLC v. United States, 244 F.3d 1356, 1360 (Fed. Cir. 2001).

In this case, Stout Road has not produced any evidence that Ms. Rutkowski possessed actual authority to obligate the United States by contract. Similarly, Stout Road has not shown that Ms. Rutkowski's superiors, Ms. De Los Santos and Mr. Herpel, possessed actual authority to bind the Government. Further, Ms. Latker, DLA's Corporate Intern Program Manager, does not possess a Contracting Officer's warrant. Thus, considering Ms. Rutkowski's chain of supervision, not one of the persons to whom she reports was in a position to delegate any contracting authority to her. Stout Road has failed to show that any of these persons had actual authority to enter into contracts on behalf of the Government.

Both parties rightly have observed that government employees are permitted to book lodging for themselves when called upon to participate in work-related travel. The reimbursement of federal travel expenses is governed by 5 U.S.C. §§ 5701-5710, addressing

Federal Travel and Subsistence Expenses and Mileage Allowances, and 41 C.F.R. pts. 300-304, the Federal Travel Regulation. The Department of Defense has issued supplemental regulations that govern DSCR employee travel.[2] Department of Defense Civilian Personnel Joint Travel Regulations ("JTR"). When travel is necessary, the employee receives a written travel authorization establishing the conditions under which official travel is authorized at government expense. JTR, par. C3050. Although employees charge their travel expenses to an individually billed credit card, they are entitled to reimbursement for properly approved travel expenses. See 5 U.S.C. § 5702(a)(1)(B); 41 C.F.R. § 301-52. Thus, the applicable statute and regulations provide authority for federal employees to procure lodging for *themselves* by billing to a government-sponsored charge card, for which they may be reimbursed. See JTR, pars. C1100, C1445. Employees are not authorized to *bind the Government* for the cost of such lodging.

D. Ms. Rutkowski's Actions Were Not Ratified By Her Superior.

Stout Road argues that the agreement was a binding contract because Ms. Rutkowski's superior, Ms. Latker, ratified the agreement. Case law holds that "[a]greements made by government agents without authority to bind the government may be subsequently ratified by those with authority." Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429, 1433 (Fed. Cir. 1998).

Even if Ms. Latker had wanted to ratify the contract, she could not legally have done so. She was not a warranted contracting officer, and thus lacked authority to ratify Ms. Rutkowski's agreement. See FAR § 1.602-3(c)(3) (authorizing ratification only if "[t]he resulting contract would otherwise have been proper if made by an appropriate contracting officer."). Stout Road acknowledges that "for effective ratification, a superior must have authority to ratify." Pltf's Brief at 14. However, Stout Road has not cited any evidence granting the requisite authority to Ms. Latker. In fact, she disavows having any such authority. (Latker Decl., Jan. 7, 2008, at ¶ 2).

Moreover, ratification must be based upon a demonstrated acceptance of the contract. Silence is not sufficient to establish a demonstrated acceptance of the contract. Harbert/Lummus Agrifuels Projects, 143 F.3d at 1434. Ms. Latker's awareness of the agreement alone is insufficient to create a ratification. (Latker Decl., Jan. 7, 2008, at ¶¶ 2,3).

[2] These regulations may be found on the Internet at: http://dodtravelregs.hqda.pentagon.mil/propub/template.htm?view=main.

E. The Doctrine of Implied Actual Authority Does Not Apply.

Stout Road asserts in the alternative that Ms. Rutkowski had "implied actual authority" to bind the Government. Some cases have defined "implied actual authority" as the authority to bind the United States when the action taken "is considered to be an integral part of the duties assigned to a Government employee." Sam Gray Enters., Inc. v. United States, 43 Fed. Cl. 596, 603 n.10 (1999). However, the doctrine applies only when "some contracting authority was actually delegated." Id. (quoting Cal. Sand & Gravel, Inc. v. United States, 22 Cl. Ct. 19, 27 (1990)).

Stout Road's reliance on H. Landau & Company v. United States, 886 F.2d 322 (Fed. Cir. 1989), is misplaced for this very reason. In Landau, the plaintiff was required to show that the officer whose conduct it relied upon had actual authority to bind the Government. Id. at 324. The Court observed in California Sand & Gravel that "Landau and the theory of implied actual authority is of limited application, and was not intended to repeal the long established rule that, when dealing with the government, only government agents with actual authority can make a contract, express or implied." 22 Cl. Ct. at 27. Here, there was no authority actually delegated to Ms. Rutkowski or her superiors. The doctrine of "implied actual authority," whatever its application may be in other circumstances, is not applicable to this case.

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED. Plaintiff's Cross-Motion for Summary Judgment is DENIED. No costs. The Clerk is directed to enter judgment dismissing Plaintiff's complaint.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge